*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

——————————

**UNITED STATES**
Appellee

**v.**

**James H. BASS, Gunnery Sergeant**
United States Marine Corps, Appellant

**No. 25-0149**
Crim. App. No. 202300185

Argued January 14, 2026—Decided June 24, 2026

Military Judges: Ryan Lipton (arraignment)
and Adam J. Workman (motions and trial)

For Appellant: *Lieutenant Meggie C. Kane-Cruz*, JAGC, USN (argued); *Lieutenant Commander Leah M. Fontenot*, JAGC, USN.

For Appellee: *Lieutenant K. Matthew Parker*, JAGC, USN (argued); *Colonel Iain D. Pedden*, USMC, and *Major Mary Claire Finnen*, USMC (on brief); *Commander John T. Cole*, JAGC, USN, and *Brian K. Keller*, Esq.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON joined with respect to Parts I., II.A., and III., Judge MAGGS joined, except as to Parts II.A. and II.C., and Judge HARDY joined. Chief Judge OHLSON filed a separate opinion, concurring in part and in the judgment. Judge MAGGS filed a separate opinion, concurring in part and in the judgment, in which Judge JOHNSON joined with respect to Part II.A. Judge JOHNSON filed a dissenting opinion, in which Chief Judge OHLSON joined with respect to Part II. of Judge JOHNSON's dissent.

——————————

Judge SPARKS delivered the opinion of the Court.

The Secretary of the Navy issued Sec'y of the Navy, All Navy Gen. Admin. Msg. 074/20, Prohibition On The Use Of Hemp Products Updated (July 2020) [hereinafter ALNAV 074/20], which states, in relevant part:

> 2. On December 20, 2018, the President signed into law the Agriculture Improvement Act of 2018, removing industrial hemp from the Controlled Substances Act . . . and excluding from the definition of marijuana those hemp products containing up to 0.3 percent tetrahydrocannabinol (THC).
>
> 3. Due to this change in the law, new hemp products are commercially available in the United States, the normal use of which could cause a positive urinalysis result. The United States Food and Drug Administration (FDA) does not determine or certify the THC concentration of commercially available hemp products, such as cannabidiol (CBD). Accordingly, these products may contain appreciable levels of THC, yet omit any reference to THC on the product label and/or list an inaccurate THC concentration. Consequently, Sailors and Marines cannot rely on the packaging and labeling of hemp products in determining whether the product contains THC concentrations that could cause a positive urinalysis result.
>
> 4. . . .The prohibitions in paragraph (5) below are general intent offenses. This means that a violation of this ALNAV occurs whenever a Service Member intends to use any product made or derived from hemp . . . .
>
> 5. Effective immediately:
>
>     a. Sailors and Marines are prohibited from using any product made or derived from hemp . . . including CBD . . . .
>
>     b. This prohibition does not apply to use . . . without knowledge that the product was made or derived from hemp, including CBD, where the lack of knowledge is reasonable.

Contrary to his plea, Appellant was convicted by a military judge, sitting as a special court-martial, of two specifications of violating paragraph 5 of ALNAV 074/20, by wrongfully using THC-8, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2018). The military judge sentenced Appellant to a reduction to the grade of E-5 and a reprimand. The convening authority approved the sentence. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence. *United States v. Bass*, No. NMCCA 202300185, 2025 CCA LEXIS 70, at *16, 2025 WL 602234, at *7 (N-M. Ct. Crim. App. Feb. 25, 2025) (unpublished). We granted review of the following issues:

> I. Whether the military judge abused his discretion in admitting evidence under M.R.E. 404(b) of prior positive urinalysis results for which Appellant had been previously acquitted at court-martial.

> II. Whether the military judge erred in relying on the "permissive inference" to convict Appellant under Article 92 of knowing use of a non-controlled, commonly available substance.

*United States v. Bass,* 86 M.J. 242 (C.A.A.F. 2025) (order granting review).

We hold that the military judge abused his discretion in admitting the prior urinalysis results and related testimony pursuant to Military Rule of Evidence (M.R.E.) 404(b) because, absent a repeated, fact-specific, innocent ingestion defense, they lacked the similarity required for the doctrine of chances and served only as impermissible propensity evidence. We further hold that, in prosecutions under ALNAV 074/20, a positive THC-8 urinalysis result alone cannot rationally support a permissive inference that a servicemember knowingly used hemp or a hemp-derived product. These errors, converging on the contested element of knowledge, cumulatively denied Appellant a fair trial, and we therefore set aside the findings and sentence.

## I. Background

In 2022, Appellant was tried by special court-martial for violating Article 92, UCMJ, after he tested positive for

THC-8 in multiple urinalyses in 2021. At trial, Appellant advanced a specific innocent ingestion defense, testifying that he unknowingly consumed THC-8 in vitamin gummies his wife had given him. Appellant explained that he recalled testing positive for THC-8 because "you only remember things in your life that mean something," he continued, "I remember those days because they were monumental days to me . . . because my career was almost going to get flushed down the drain." Appellant was acquitted.

Shortly thereafter, Appellant again provided urine samples that tested positive for THC-8 and was charged with two specifications under Article 92, UCMJ, for violating paragraph 5 of ALNAV 074/20. Before the present trial, the Government gave notice of its intent to introduce evidence of Appellant's 2021 positive THC-8 urinalyses under M.R.E. 404(b). The military judge found the Government's notice deficient but indicated that he might revisit admissibility if Appellant "raises a defense of innocent ingestion or mistake or accident."

In the defense's opening statement, trial defense counsel argued, in part, that the Government could not prove that Appellant knowingly used hemp or a hemp-derived product, as required by ALNAV 074/20. Trial defense counsel highlighted, among other points, the lack of Food and Drug Administration regulation of hemp products, the pervasive mislabeling of such products, ALNAV 074/20's recognition that positive urinalysis results alone are ordinarily insufficient to support prosecution, and the widespread, lawful availability of hemp and hemp-derived products in the civilian marketplace.

The Government's expert, Dr. JGR, a senior chemist at the Navy Drug Screening Lab in Jacksonville, Florida, testified that THC-8 is derived from hemp, whereas THC-9 is associated with marijuana. Dr. JGR explained that urinalysis testing for THC-8 cannot identify the route of ingestion, the dosage, or the circumstances under which exposure occurred. Dr. JGR further acknowledged that urinalysis testing for THC-8 cannot establish a user's intent and that she could not rule out the possibility that

4

Appellant unknowingly ingested THC-8. Further, Dr. JGR noted it was unclear whether Appellant would have experienced any psychoactive effects from the THC-8. Finally, Dr. JGR noted that THC-8 is found in a variety of commercially available products, including beverages, vape cartridges, candy, and gummies.

At the close of the Government's case, Appellant moved under Rule for Courts-Martial (R.C.M.) 917 for a finding of not guilty, arguing that the evidence failed to show he knowingly ingested THC-8. The Government responded that the military judge could infer wrongful and knowing ingestion by applying a permissive inference from the positive urinalysis results for THC-8. The military judge denied the motion, concluding that two positive urinalyses for THC-8 provided "some evidence" that Appellant violated ALNAV 074/20. In his defense, Appellant called three witnesses, each of whom testified to his good military character.

After Appellant rested, the Government renewed its M.R.E. 404(b) motion to admit the results of Appellant's 2021 urinalyses, along with a portion of his prior court-martial testimony to demonstrate lack of mistake as to Appellant's knowing THC-8 use in the current court-martial. Appellant objected, noting that he had not raised a specific innocent ingestion defense in the present case, so there was no logical relationship between the two courts-martial, causing the earlier results to serve only as propensity evidence. The military judge found that the prior results made the possibility of mistaken ingestion less probable and, though only somewhat probative, were not substantially outweighed by the danger of unfair prejudice. Accordingly, the military judge admitted the evidence under M.R.E. 404(b).

Although no evidence showed that anyone observed Appellant possessing or using hemp or a hemp-derived product, Appellant was nonetheless found guilty of both specifications. The military judge entered special findings under R.C.M. 918(b). In the special findings, the military judge, relying on the permissive inference, concluded that the THC-8 detected in Appellant's urine resulted from Appellant's wrongful and knowing use of hemp or a hemp-

derived product. The military judge also considered Appellant's previous positive urinalyses for THC-8 and testimony to establish Appellant's knowledge of THC-8 and to undermine any assertion of accidental or unknowing ingestion of hemp or a hemp-derived product in the current court-martial.

## II. Discussion

Appellant was convicted of the following:

Charge I, Specification 1 in this case reads:

In that Gunnery Sergeant James H. Bass, U.S. Marine Corps, on active duty, did, at an unknown location, on or about 19 October 2022, violate a lawful general order, which was his duty to obey, to wit: paragraph 5, ALNAV 074/20, dated 24 July 2020, by wrongfully using Tetrahydrocannabinol-8.

Charge I, Specification 2 in this case reads:

In that Gunnery Sergeant James H. Bass, U.S. Marine Corps, on active duty, did, at an unknown location, on or about 13 December 2022, violate a lawful general order, which was his duty to obey, to wit: paragraph 5, ALNAV 074/20, dated 24 July 2020, by wrongfully using Tetrahydrocannabinol-8.

The elements of Article 92, UCMJ, for violation of or failure to obey a lawful general order or regulation are:

(a) That there was in effect a certain lawful general order or regulation;

(b) That the accused had a duty to obey it; and

(c) That the accused violated or failed to obey the order or regulation.

*Manual for Courts-Martial, United States* pt. IV, para. 18.b.(1) (2019 ed.).

Paragraph 5 of ALNAV 074/20 prohibits knowing use of hemp-derived products, exempting reasonable unknowing use. Accordingly, to establish a violation of ALNAV 074/20, the Government had to prove beyond a reasonable doubt either that Appellant knew the product he used was hemp or hemp-derived or that his lack of such knowledge was unreasonable.

### A. Admission of M.R.E. 404(b) Evidence

Appellant argues that the military judge abused his discretion by admitting his prior THC-8 urinalysis results and resulting testimony under M.R.E. 404(b). He contends that the earlier court-martial, where he advanced a specific innocent ingestion theory tied to vitamin gummies and was acquitted, did not share the kind of fact-specific similarity with the present case that would give those prior acts probative value for knowledge he used hemp or a hemp-derived product. The Government contends that the Appellant's argument and cross-examination in the instant court-martial sufficiently raised a theory of innocent ingestion or mistake, thus opening the door to admission of his prior positive drug tests and related testimony to rebut that claim.

We review a military judge's decision to admit evidence under M.R.E. 404(b) for an abuse of discretion. *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024). Military judges abuse their discretion if their findings of fact are clearly erroneous, their decisions are influenced by an erroneous view of the law, or their decisions are outside the range of choices reasonably arising from the applicable facts and the law. *Id.*

"[P]ropensity evidence is a generally impermissible form of character evidence in which members 'prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *United States v. Quezada*, 82 M.J. 54, 59 (C.A.A.F. 2021) (quoting M.R.E. 404(b)(1)). M.R.E. 404(b)(1) provides that "[e]vidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2). Where M.R.E. 404(b) evidence is offered for a permissible, non-propensity purpose, the military judge "must conduct a M.R.E. 403 balancing test and exclude this otherwise admissible evidence 'if its probative value is substantially outweighed by a danger of

. . . unfair prejudice.' " *Wilson*, 84 M.J. at 390 (alteration in original) (quoting M.R.E. 403).

We review a military judge's decision to admit M.R.E. 404(b) evidence under the three-part test set out in *United States v. Reynolds*: (1) does the evidence reasonably support a finding that the accused committed a specific act; (2) is a fact of consequence made more or less probable by the existence of this evidence; and (3) is the probative value of the evidence substantially outweighed by the danger of unfair prejudice? 29 M.J. 105, 109 (C.M.A. 1989). "If the admitted evidence fails to meet any of the factors laid out in *Reynolds*, the military judge will have erred," and we "must then assess the prejudice, if any, resulting from that error." *Wilson*, 84 M.J. at 391.

The military judge abused his discretion by admitting Appellant's prior THC-8 urinalysis results and testimony under M.R.E. 404(b). Although the military judge concluded that the prior results and testimony made "the possibility of mistake less probable," that rationale did not actually make any fact of consequence more or less probable. Instead, it rested on a flawed application of the doctrine of chances.

The doctrine of chances permits the factfinder, in rare cases, to infer that a repeated, highly unusual event is unlikely to have occurred innocently when the underlying incidents share a sufficiently specific factual pattern. *United States v. Tyndale*, 56 M.J. 209, 213 (C.A.A.F. 2001) (plurality opinion). In *Tyndale*, we upheld admission of a prior positive methamphetamine urinalysis because both the prior and charged incidents shared a highly specific factual pattern: each involved claimed unknowing ingestion at parties, the same alleged source of the drug, and corroboration by the same family member. *Id*. at 214. We emphasized, however, that the doctrine of chances:

> is not a roll of the appellate dice. Rather, as illustrated here, its application is limited to those circumstances where actions are sufficiently similar to demonstratively contribute to the truth finding process. Its use should not be frequent, except in rare factual settings such as the one presented in this case.

*Id.*

By contrast, in *United States v. Graham*, 50 M.J. 56, 59-60 (C.A.A.F. 1999), we held that evidence of a prior positive marijuana urinalysis and acquittal was inadmissible where the accused offered only a general denial and good-soldier defense at a later trial. The government argued that the prior positive test could rebut a theory of innocent ingestion, but we rejected that view because the accused had not advanced a repeated, fact-specific innocent ingestion narrative linked to the same product or event. *Id.* Absent such a narrative, the prior acquittal did not render any fact of consequence at the second trial more or less likely; it merely invited a forbidden propensity inference–that because the accused had tested positive for marijuana before, he likely used marijuana knowingly and wrongfully on the charged occasion. *Id.* at 59.

This case aligns with *Graham*, not *Tyndale*. At his earlier court-martial, Appellant testified that he unknowingly ingested THC-8 through vitamin gummies supplied by his wife, but at the present trial he did not renew that theory or identify any product as the source of his 2022 THC-8 exposure. Instead, Appellant generally denied knowing use and attacked the Government's proof of knowledge by highlighting, among other things, the lack of FDA regulation, the risk of mislabeling, ALNAV 074/20's own recognition that labels may be inaccurate, and the lawful, widespread availability of hemp and hemp-derived products. Absent a repeated, fact-specific innocent ingestion narrative tied to similar circumstances, the 2021 urinalysis results and prior testimony merely invited a forbidden propensity inference that because the accused tested positive before, he likely used THC-8 knowingly and wrongfully on the charged occasions. We therefore hold that the military judge abused his discretion in admitting Appellant's THC-8 urinalysis results and related testimony under M.R.E. 404(b).

### B. Permissive Inference

This Court reviews questions of law de novo. *United States v. Merritt*, 72 M.J. 483, 486 (C.A.A.F. 2013). A permissive inference is an evidentiary tool that allows a

trier of fact to infer an elemental fact, such as knowledge, from a proved fact, such as the presence of a metabolite in the urine. *United States v. Harper*, 22 M.J. 157, 161 (C.M.A. 1986). A permissive inference satisfies due process only if there is a rational connection between the fact proved and the fact inferred such that the inferred fact is "more likely than not to flow from the proved fact on which it is made to depend." *Barnes v. United States*, 412 U.S. 837, 842 (1973) (citing *Leary v. United States*, 395 U.S. 6, 36 (1969)).

The Government contends we should treat prosecutions under ALNAV 074/20 as analogous to prosecutions under Article 112a, UCMJ, 10 U.S.C. § 912a (2018), and to extend to hemp-derived THC-8 the familiar permissive inference that a positive urinalysis for a controlled substance can indicate knowing and wrongful use. We decline to do so. In the Article 112a, UCMJ, context, we have long approved a permissive inference that a positive urinalysis for a controlled substance supports an inference of knowing and wrongful use. *Harper*, 22 M.J. at 162; *see also United States v. Ford*, 23 M.J. 331, 337 (C.M.A. 1987) (noting the permissive inference has existed in the military justice system since 1955 and has found "longstanding and consistent judicial approval" in the military and civilian courts). That inference rests on several premises: controlled substances are illegal to possess, are tightly regulated even in lawful channels, and are commonly associated with noticeable psychoactive effects, making unknowing ingestion unlikely and a positive test a rational indicator of knowing, wrongful use.

Those premises do not hold for hemp and hemp-derived products governed by ALNAV 074/20. The issuance of ALNAV 074/20 was a direct consequence of the legalization of industrial hemp by the Agriculture Improvement Act of 2018. Unlike controlled substances, hemp and hemp-derived products containing THC-8 are lawfully sold in mainstream retail venues, such as grocery stores, gas stations, and are legal for the civilian population. ALNAV 074/20 itself warns that servicemembers cannot rely on packaging or labeling to determine if a product will cause a positive urinalysis, as mislabeling is pervasive. Moreover, the Government's own expert testified that the

urinalysis results cannot determine if the user experiences any such psychoactive effect.

In this environment, a positive urinalysis for THC-8 does not make it more likely than not that the servicemember knew the product ingested was hemp or hemp-derived, as ALNAV 074/20 requires. We therefore hold that a positive THC-8 urinalysis result, standing alone, cannot rationally support a permissive inference of knowing use of a hemp or hemp-derived product under ALNAV 074/20, and the military judge erred as a matter of law in relying on such an inference to find knowledge and wrongfulness.

### C. Cumulative Error

We review the cumulative effect of all errors, plain or preserved, de novo. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). Under the cumulative error doctrine, reversible error may exist when " 'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.' " *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170-71 (C.M.A. 1992)). We will reverse only when the combined effect of the errors deprived the accused of a fair trial. *Id.*

Knowledge was the central contested element at Appellant's court-martial. Both the erroneous admission of M.R.E. 404(b) evidence and the improper use of a permissive inference bore directly on that element. The military judge admitted the prior THC-8 urinalysis results and testimony to prove knowledge and to rebut any suggestion of innocent or mistaken ingestion, and then expressly relied on that evidence, together with the 2022 urinalysis results, to invoke a permissive inference of knowing, wrongful use in his special findings.

Once the inadmissible M.R.E. 404(b) evidence and the impermissible permissive inference are removed, the Government's proof of knowledge rests solely on the bare fact that Appellant's 2022 urine samples contained THC-8, a fact that the Government's own expert conceded cannot, by itself, reveal intent, the circumstances of exposure, or any psychoactive effect. In a marketplace where hemp and hemp-derived THC-8 are widely and lawfully available, mislabeling is acknowledged in ALNAV 074/20, and

unknowing ingestion is anticipated by the order itself, such stand-alone urinalysis evidence falls far short of "overwhelming" proof of knowledge. *See United States v. Dollente*, 45 M.J. 234, 242 (C.A.A.F. 1996) ("Courts are far less likely to find cumulative error . . . when a record contains overwhelming evidence of a defendant's guilt."). Accordingly, we conclude that the combined impact of the M.R.E. 404(b) error and the invalid permissive inference on the same critical element of knowledge denied Appellant a fair trial and requires reversal under the cumulative error doctrine.

## III. Conclusion

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Navy. A rehearing is authorized.

Chief Judge OHLSON, concurring in part and in the judgment.

I concur with the Background section (Part I.) and two parts of the analysis of this Court's lead opinion. First, I agree that the military judge abused his discretion by admitting Appellant's prior THC-8 urinalysis results—and the resulting testimony—under Military Rule of Evidence (M.R.E.) 404(b). Therefore, I join Part II.A. of the lead opinion. Second, I agree that we must reverse the judgment of the lower court and set aside the findings and the sentence because the M.R.E. 404(b) evidentiary error by itself resulted in material prejudice. *See United States v. Jones*, 85 M.J. 80, 84 (C.A.A.F. 2024) (delineating the standard for nonconstitutional evidentiary errors). Therefore, I join Part III. of the lead opinion.

I cannot, however, join Part II.C. of the lead opinion, which applies the cumulative error doctrine. Instead, I join Part II. of Judge Johnson's dissenting opinion because I agree that the military judge did not err by applying the permissive inference to find Appellant guilty of violating a lawful general regulation by using a substance containing THC-8.

For these reasons, I concur in part and in the judgment.

Judge MAGGS, with whom Judge JOHNSON joins in part, concurring in part and in the judgment.

## I. Introduction

I join the Court's opinion except with respect to Parts II.A. and II.C., and I concur in the judgment. This means that I agree with the Court's decision that the military judge erred in relying on a "permissive inference" to find Appellant guilty of the knowing use of a non-controlled, commonly available substance. It also means that I agree with the Court's conclusion that the findings and sentence must be set aside and that a rehearing must be authorized. But I am not persuaded that the military judge abused his discretion in admitting evidence of prior positive urinalysis results or that it is necessary to discuss the cumulative error doctrine.

## II. Admission of Prior Urinalysis Results

In discussing the admission of prior urinalysis results, the Court agrees with the parties that the precedents most on point are *United States v. Graham*, 50 M.J. 56 (C.A.A.F. 1999), and *United States v. Tyndale*, 56 M.J. 209 (C.A.A.F. 2001) (plurality opinion). In both *Graham* and *Tyndale*, the accused was charged with unlawful drug use. *Graham*, 50 M.J. at 57; *Tyndale*, 56 M.J. at 210. In both cases, the military judge admitted evidence that the accused previously had tested positive for using drugs. *Graham*, 50 M.J. at 57; *Tyndale*, 56 M.J. at 212. And in both cases, the issue was whether the evidence should have been excluded under Military Rule of Evidence (M.R.E.) 404(b) as improper propensity evidence. *Graham*, 50 M.J. at 60; *Tyndale*, 56 M.J. at 212-13. The Court in *Graham* held that the military judge abused his discretion in admitting the evidence, but the Court in *Tyndale* held that the military judge did not abuse his discretion in admitting the evidence. *Graham*, 50 M.J. at 57; *Tyndale*, 56 M.J. at 215-16.

The Court reached opposite results in *Graham* and *Tyndale* because the accused in those cases raised different defenses at trial. *Tyndale*, 56 M.J. at 216. "In *Graham*, the defense was a general denial of the charge. . . . [Therefore,] there was 'no fact of consequence that a positive result on a previous urinalysis, if resurrected at [that] trial, could

*United States v. Bass*, No. 25-0149/MC
Judge MAGGS, with whom JOHNSON, J. joins in part,
concurring in part and in the judgment

rebut.'" *Id.* (third alteration in original) (quoting *Graham*, 50 M.J. at 59). In *Tyndale*, by contrast, the accused raised an innocent ingestion defense. *Id.* at 212. And because the accused had also raised an innocent ingestion defense in connection with his *previous* positive test result, the Court held that the prior positive test result was admissible based on the "doctrine of chances." *Id.* at 213-15. The Court explained that the doctrine of chances "posits that it is unlikely a defendant would be repeatedly, innocently involved in similar, suspicious circumstances." *Id.* at 213. The prior positive test result therefore was relevant to rebut the accused's innocent ingestion defense in *Tyndale*. *Id.* at 214-15.

The Court holds that Appellant's case is controlled by *Graham* and distinguishable from *Tyndale* based on the defense that Appellant raised at trial. The Court asserts:

> Appellant generally denied knowing use and attacked the Government's proof of knowledge by highlighting, among other things, the lack of [U.S. Food and Drug Administration] regulation, the risk of mislabeling, [All Navy Gen. Admin. Msg.] 074/20's own recognition that labels may be inaccurate, and the lawful, widespread availability of hemp and hemp-derived products.

The Court therefore concludes that the military judge abused his discretion in admitting the prior positive test results.

I am unpersuaded that this reasoning suffices to show the military judge abused his discretion in admitting the evidence. In my view, the defense that the Court describes sounds more like the innocent ingestion defense raised in *Tyndale* than the general denial defense raised in *Graham*. In addition, other parts of the record indicate that Appellant was raising an innocent ingestion defense in this case. For example, defense counsel stated in opening argument: "[An expert witness], a man with over 40 years in forensic chemistry and urinalysis test results, will tell you that the results of this urinalysis are consistent with an unknowing ingestion." And on cross-examination of the Government's expert witness, defense counsel asked the witness to

*United States v. Bass*, No. 25-0149/MC
Judge MAGGS, with whom JOHNSON, J. joins in part,
concurring in part and in the judgment

confirm that she "can't determine the mechanism by which the [tetrahydrocannabinol (THC)] might have entered the body" and that she "can't rule out an unknowing ingestion."

Based on these facts, I conclude that the military judge did not abuse his discretion in admitting the prior positive test results. The military judge could reasonably have concluded that, as in *Tyndale*, the results were relevant to rebut Appellant's innocent ingestion defense and did not serve merely to invite a forbidden propensity inference under M.R.E. 404(b). I therefore would answer the first granted issue in the negative.

### III. Conclusion

Because I concur with the Court that the second granted issue should be decided in the affirmative, I also concur in the Court's decision to set aside the judgment of the United States Navy-Marine Corps Court of Criminal Appeals, to set aside the findings and sentence, to return the case to the Judge Advocate General of the Navy, and to authorize a rehearing.

Judge JOHNSON, with whom Chief Judge OHLSON joins in part, dissenting.

I would hold the military judge did not abuse his discretion by admitting the prior urinalysis results. Therefore, I join Part II. of Judge Maggs's separate opinion concurring in part and in the judgment. I would also hold the military judge did not err in relying on the permissive inference to find Appellant guilty of knowing use of a non-controlled substance in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2018). Because I would answer both granted issues in the negative and affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals, I respectfully dissent from the Court's lead opinion.

## I. The prior positive urinalyses

The military judge admitted the prior urinalyses after concluding each of the *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989), prongs was satisfied:

> (1) the evidence reasonably supported a finding that Appellant committed the prior acts;

> (2) "the evidence of the prior urinalyses does make the possibility of mistake less probable. Testing positive on two prior occasions and going through the court-martial process . . . makes it less probable that any ingestion was mistaken"; and

> (3) "the defense theory of an unknowing or mistaken ingestion, which was brought out on the cross-examination of the government's witness, does raise the probative value of the evidence."

I join Part II. of Judge Maggs's separate opinion because I agree that the military judge did not abuse his discretion in admitting the prior positive test results on the grounds that they were logically relevant to his innocent ingestion defense and did not serve merely to demonstrate propensity.

*United States v. Bass*, No. 25-0149/MC
Judge JOHNSON, with whom Chief Judge OHLSON
joins in part, dissenting

## II. The permissive inference

In Article 112a, UCMJ, 10 U.S.C. § 912a (2018), cases, a military judge has discretion to permit the factfinder to draw an inference of knowing use of a controlled substance from the presence of the substance in the accused's body. *Manual for Courts-Martial, United States* pt. IV, para. 50.c.(10) (2019 ed.). In this case, we must decide whether the permissive inference applies to an Article 92, UCMJ, orders violation arising out of the use of a banned but not "controlled" substance. Because the charged offense closely resembles an Article 112a offense but for the fact that the illicit substance is not a "controlled" substance, the rationale behind the permissive inference applies equally to the Article 92, UCMJ, offense of violating a lawful general order as charged, by wrongfully using THC-8. Therefore, I would hold that the military judge did not err in allowing the permissive inference in this case.

"Inferences and presumptions are a staple of our adversary system of factfinding." *County Ct. of Ulster Cnty. v. Allen*, 442 U.S. 140, 156 (1979). "The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Id.* at 157.

When reviewing a permissive inference, the Supreme Court "has required the party challenging it to demonstrate its invalidity as applied to him." *Id.* The inference cannot meet the prosecution's burden if the trier of fact could not rationally "make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." *Id.*; *Francis v. Franklin*, 471 U.S. 307, 314-15 (1985) (stating that a permissive inference "violates the Due Process Clause only if the suggested conclusion is not one

*United States v. Bass*, No. 25-0149/MC
Judge JOHNSON, with whom Chief Judge OHLSON
joins in part, dissenting

that reason and common sense justify in light of the proven facts before the jury").

Whether it is appropriate for the government to argue the permissive inference of wrongfulness in a particular case is a question of law this Court reviews de novo. *See United States v. Green*, 55 M.J. 76, 80 (C.A.A.F. 2001) ("The military judge, as gatekeeper, may determine in 'appropriate circumstances' that the test results, as explained by the expert testimony, permit consideration of the permissive inference that presence of the controlled substance demonstrates knowledge and wrongful use."). Where the inference is permissible, the finder of fact must decide whether to draw the inference of wrongfulness. *United States v. Bond*, 46 M.J. 86, 89-90 (C.A.A.F. 1997) (" '[W]hether to draw an inference of wrongfulness is a question to be decided by the factfinder using the standard of reasonable doubt.' " (alteration in original) (quoting *United States v. Ford*, 23 M.J. 331, 335 (C.M.A. 1987))).

In *Ford*, we held the permissive inference was constitutionally permissible in an Article 112a, UCMJ, case involving marijuana. 23 M.J. at 337. We cited four considerations that supported that conclusion.

First, we noted that even though marijuana use and possession was permitted in small amounts by some civilian jurisdictions, it was contraband for servicemembers. Therefore, a servicemember's "access to it, which impacts on the probability of innocent ingestion, is greatly reduced." *Id.*

Second, we noted that "the military services in recent years have greatly intensified their efforts to eliminate drug abuse and have well publicized this campaign. Therefore, the servicemember is on notice to avoid any and all contact with these substances, a fact which further reduces the possibility of innocent ingestion." *Id.* (citation omitted).

Third, we observed:

*United States v. Bass*, No. 25-0149/MC
Judge JOHNSON, with whom Chief Judge OHLSON
joins in part, dissenting

> [T]he physiological effects from the internal
> presence of the drug in the body might serve to
> alert the user to the presence of a controlled
> substance in his system. Such recognized common
> knowledge suggests that the possibility of
> knowing drug use is great when a servicemember
> fails to satisfactorily explain the presence of the
> drug's constituent elements in his system.

*Id.* (citations omitted).

Fourth, we noted that "human experience in terms of self-preservation generally dictates that a person, whether a servicemember or not, generally knows what he consumes." *Id.*

For all of the reasons stated in *Ford*, the permissive inference of wrongfulness is appropriate in this case involving a charge of wrongful use of a non-controlled substance banned by service regulation. Use and possession of hemp and hemp-derived substances like THC-8, while lawful in some civilian jurisdictions, are prohibited by service regulation, which prohibits sailors and Marines "from using any product made or derived from hemp." Sec'y of the Navy, All Navy Gen. Admin. Msg. 074/20, Prohibition On The Use Of Hemp Products Updated para. 5(a) (July 2020). As such, servicemembers are on notice to avoid products containing these substances. This in turn places a responsibility on servicemembers to restrict their access to such products, thereby reducing the possibility of innocent ingestion. Moreover, expert testimony established that hemp and THC containing products are typically labeled as such, even if the concentration or specific compound is not disclosed. Additionally, expert testimony established that THC-8 consumption may cause physiological effects, suggesting that a user knows he has ingested it even if a positive urinalysis alone cannot determine whether a user felt any effects. And finally, there is no reason the instinct for self-preservation cited by the Court in *Ford* would not support an inference an accused knew he consumed a hemp

*United States v. Bass*, No. 25-0149/MC
Judge JOHNSON, with whom Chief Judge OHLSON
joins in part, dissenting

product just as it supports the inference he knowingly
consumed a controlled substance.

It is permissible for a trier of fact to infer the *elemental*
fact (i.e., that the ingestion of the banned substance was
knowing) if the prosecution proves the *basic* fact (i.e., that
the urinalysis test demonstrated that the accused had
ingested the banned substance). *See Allen*, 442 U.S. at 157.
Here, the prosecution admitted the test results and had
expert testimony to explain said results, in accordance with
*Green*, 55 M.J. at 80-81. Under these circumstances, the
military judge appropriately approved the use of the
permissive inference to prove an element of the Article 92,
UCMJ, offense of wrongful use of THC-8. *See also United
States v. Pasha*, 24 M.J. 87, 89 (C.M.A. 1987) (approving a
permissive inference that the accused was the person who
stole certain property if the accused was found in knowing,
conscious, and unexplained possession of that property);
*United States v. Redmond*, 21 M.J. 319, 325 (C.M.A. 1986)
(approving a permissive inference of intent to kill arising
from evidence the accused smashed the victim's head with
a hammer and from circumstantial evidence of his state of
mind at the time of the offense); *United States v. Lyons*, 33
M.J. 88, 89-90 (C.M.A. 1991) (approving a permissive
inference that the unlawfulness of the carrying of a
concealed weapon may be inferred from the fact of the
carrying).

In *Ford*, we held that the permissive inference *may* be
"sufficient by itself to support a finding of wrongfulness
beyond a reasonable doubt," even "where the defense
subsequently introduces evidence which purportedly
undermines or contradicts this inference." *Ford*, 23 M.J. at
332. But the inference is just that—permissive. As the
Court explained:

> We . . . must emphasize that the factfinder is not
> required to reach findings of guilty on this basis
> [of the permissive inference]. Moreover, the
> Government must convince or persuade the
> factfinder beyond a reasonable doubt to do so. Our

*United States v. Bass*, No. 25-0149/MC
Judge JOHNSON, with whom Chief Judge OHLSON
joins in part, dissenting

> holding today is simply that we find no constitutional violation in findings of guilty to wrongful marihuana use based on such a record.

*Id.* at 337.

Questions concerning Appellant's access to hemp-containing contraband; whether the levels of THC-8 metabolite in his urinalyses correspond to physiological effects that would have alerted him to the presence of THC-8 in his body; and whether he was aware that he consumed a product containing THC-8 are questions for the trier of fact to ascertain and consider in weighing whether to draw the inference of wrongfulness in this case. The military judge had the benefit of dueling expert testimony to flesh out these questions, which he addressed in his special findings. Under the circumstances, I conclude the military judge did not err by applying the permissive inference to find Appellant guilty of violating a lawful general regulation by wrongfully using a substance containing THC-8.